J-A17029-23
J-A17030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| ROGER SWINGLE, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF REBECCA DEFREHN | : IN THE SUPERIOR COURT OF : PENNSYLVANIA : : : : |
| v. | : : : : |
| MORRIS WILLIAMS, DECEASED, OF STERLING TOWNSHIP, AND HIS HEIRS AT LAW AND SUCH OTHER PERSON OR PERSONS CLAIMING BY, UNDER OR THROUGH HIM, SCOTT WILLIAMS AND DANIELLE C. WILLIAMS | : No. 152 EDA 2023 : : : : : : : |
| WARREN HALSEY, SCOTT A. WILLIAMS AND DANIELLE C. WILLIAMS | : : : : : |
| v. | : : : : |
| ROGER SWINGLE, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF REBECCA DEFREHN, DECEASED, LITTS AND SONS STONE, CO., INC., GRASSIE AND SONS, INC., CHARLES SIMS, DOROTHY SIMS, CHARLES W. SIMS, JR., AND NANCY M. MEDALIS | : : : : : : : : : |
| APPEAL OF: ROGER SWINGLE, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF REBECCA DEFREHN | : : |

Appeal from the Judgment Entered March 29, 2023
In the Court of Common Pleas of Wayne County
Civil Division at No(s):  2015-00362,
2016-00136

J-A17029-23
J-A17030-23

| | | |
|---|---|---|
| ROGER SWINGLE, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF REBECCA DEFREHN | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| MORRIS WILLIAMS, DECEASED, OF STERLING TOWNSHIP, AND HIS HEIRS AT LAW AND SUCH OTHER PERSON OR PERSONS CLAIMING BY, UNDER OR THROUGH HIM, SCOTT WILLIAMS AND DANIELLE C. WILLIAMS | : : : : : : | No. 153 EDA 2023 |
| WARREN HALSEY, SCOTT A. WILLIAMS AND DANIELLE C. WILLIAMS | : : : | |
| v. | : | |
| ROGER SWINGLE, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF REBECCA DEFREHN, DECEASED, LITTS AND SONS STONE, CO., INC., GRASSIE AND SONS, INC., CHARLES SIMS, DOROTHY SIMS, CHARLES W. SIMS, JR., AND NANCY M. MEDALIS | : : : : : : : | |
| APPEAL OF: LITTS AND SONS STONE, CO., INC. AND GRASSIE AND SONS, INC. | : : : | |

- 2 -

J-A17029-23
J-A17030-23

Appeal from the Judgment Entered March 29, 2023
In the Court of Common Pleas of Wayne County
Civil Division at No(s):  2015-00362,
2016-00136

BEFORE:   KING, J., SULLIVAN, J., and PELLEGRINI, J.*

MEMORANDUM BY SULLIVAN, J.:                    **FILED DECEMBER 12, 2023**

These closely-related appeals from the judgments entered in the above-captioned cases involve the trial court's decision, on remand from this Court, to limit an easement granted regarding an access road to non-commercial use ("the access road").  The trial court originally granted an easement to Roger Swingle ("Swingle"), the Estate of Rebecca DeFrehn, Litts and Sons Stone Co., Inc. ("Litts"), Grassie and Sons, Inc. ("Grassie"), Charles Sims, Sr. and Dorothy Sims, Charles W. Sims, Jr. and Nancy M. Medalis (collectively, "the Swingle parties"), on property owned by Warren Halsey ("Halsey"), Morris Williams, deceased and his heirs at law ("Morris"), Scott A. Williams ("Scott"), and Daniele C. Williams ("Daniele"), and (collectively, "the Halsey parties").[1] We affirm.

In a 2022 memorandum decision, this Court provided the following background concerning the easement that is the subject of this appeal:

> This case concerns a complicated property dispute involving neighboring properties.  The subject of this dispute is what has been described as a dirt road that runs behind the parties'

---

* Retired Senior Judge assigned to the Superior Court.

[1] The Appellants in 152 EDA 2023 are the Swingle parties; the Appellants in 153 EDA 2023 are Litts and Sons Stone Co., Inc. ("Litts"), and Grassie and Sons, Inc. ("Grassie") (collectively, the "Lessees").

- 3 -

properties (the "access road"). It appears that there is no way to access the properties from the parallel public road except by the disputed access road.

Over the years, the Swingle property was used as a dairy farm, although the property contained a sparsely utilized quarry. That changed in 2011, when Swingle leased the farm to [Litts] and [Grassie] ("Lessees"), who began using the property as a commercial quarry. Traffic increased exponentially and [the Halsey parties] complained of noise and garbage build-up on their properties.

[The Halsey parties] filed a complaint for declaratory relief, claiming ownership of the access road. Swingle countered with an action to quiet title, asserting ownership due to adverse possession. These two actions were tried together . . .. [T]he trial court . . . [found] [Swingle] had established a prescriptive easement over the access road, but found Lessees had committed trespass.

The trial court made the following relevant findings of fact:

* * * *

21. In or about 1964 . . . one of [the Halsey parties'] predecessors in title, agreed to allow access [from their property] to the properties owned and used by the predecessors in title of Swingle.

* * * *

24. In the deed described [above] the access route is described as being twenty feet . . . wide.

* * * *

27. Over the years, the Swingles made use of the existing private driveway to get out to [the access road] and all of their use was for ingress and egress to their property.

28. In 2011, the Swingle parent tract began being used as a quarry, causing heavy equipment, machinery, and trucks to access the Swingle site.

- 4 -

Thus, the use of the driveway changed substantially over the years from 2011 to the present time.[2]

29. The increased use of the access road has resulted in dust and noise coming onto the [the Halsey parties'] properties.

*Halsey v. Swingle*, 283 A.3d 337 (Pa. Super. 2022), unpublished memorandum at *1-4 (capitalization changed).

On appeal, this Court affirmed the trial court's grant of a twenty-foot prescriptive easement over the access road to the Swingle parties because the evidence showed that Swingle and his predecessors had maintained the access road for fifty-nine years, made open, hostile, and notorious use of it, and were never told not to use it. *See Halsey*, 283 A.3d 337, unpublished memorandum at *6-7. This Court held, however, that the trial court erred by permitting "increased commercial use" of the access road in 2011, when the Swingles leased their property to Lessee quarry operators; in this Court's view, although the increased use of the prescriptive easement may be permissible where it is a "natural evolution," a shift from residential use to commercial use is generally not a permissible increase. *See id*. at *7, citing *McGavitt v. Guttman Realty Co.*, 909 A.2d 1, 5 (Pa. Super. 2006). This Court thus "reverse[d] the trial court's order to the extent it grants a

---

[2] Although the trial court previously found the use of the access road changed substantially after 2011, it did not impose any limitation on the uses of the prescriptive easement. *See* Trial Court Opinion, 1/29/19, at 6, 10.

prescriptive easement for purposes of commercial use," and remanded "for proceedings not inconsistent" with its holdings. *See id*. at *8.

On remand, the trial court issued an amended order that retained the portions of the original order granting a prescriptive easement but struck all references to commercial activities. *See* Amended Order, 10/19/22. The Halsey parties filed a motion for "post-trial relief" requesting, *inter alia*, that the trial court expressly limit the prescriptive easement over the access road to residential use. *See* Motion for Post-Trial Relief, 10/28/22. The Swingle parties filed an opposing memorandum of law asserting that some commercial use had been made of the Swingle property and the access road since 1959. *See* Swingles' Memorandum, 12/6/22.[3]

The court heard oral argument in December 2022. The Swingle parties argued that Lessee Litts had done some quarrying on Swingle's property before Lessee Grassie took over in 2011; the Halsey parties argued that the evidence of prior quarrying was disputed at trial and that it filed its complaint in 2015, which proved that no twenty-one-year period of open and notorious use of the road existed that could have established a prescriptive easement for quarrying. *See* N.T., 12/6/22, at 2-17. The trial court entered another amended order recognizing the prescriptive easement but stating the right of

---

[3] Lessees also filed a memorandum of law requesting that quarry operations be permitted as they existed prior to 2015 (when the complaint was filed). *See* Lessee's Memo, 12/19/22.

way over the access road was for residential use only and commercial use was banned. *See* Amended Order, 12/19/22 (the "December 2022 amended order"). The Swingle parties filed a timely motion for reconsideration. *See* Motion for Reconsideration, 12/27/22. Lessees filed a motion for reconsideration and "to request additional testimony." *See* Lessee's Motion, 12/29/22. The court denied the Swingle parties' motion for reconsideration and Lessees' motion. *See* Order, 1/6/23. The Swingle parties and Lessees appealed. The Swingle parties, Lessees, and the trial court complied with Pa.R.A.P. 1925 in appealing from the December 2022 amended order and judgments were subsequently entered.[4]

_____

[4] This Court issued rules to show cause why these appeals should not be quashed noting the December 2022 amended order appeared to be interlocutory, directed counsel to *praecipe* for the entry of judgments, and discussed the possible need to file separate notices of appeal at each trial court docket pursuant to **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018), *overruled in part*, **Commonwealth v. Young**, 265 A.3d 462, 477 (Pa. 2021). Although the trial court did not formally consolidate the two cases, it inextricably intertwined the two cases when issuing its verdicts and orders. We note that in May 2023, Pa.R.A.P. 311, 313, 314, 341, 512, 902, and 904 were amended with immediate effect in response to **Walker**, **Young**, and their progeny. Given the procedural confusion in this case and the amendment of the Rules of Appellate Procedure, we conclude there was a breakdown in the operations of the courts excusing the need to file separate notices of appeal at both court dockets and will consider the merits of the appeals.

The briefs filed by the Swingle parties' and Lessees' present virtually identical issues for review:[5]

> 1. Whether[6] the lower court erred when it determined that the prescriptive easement for accessing [Swingle's] property precludes all commercial usage to the pre-existing quarries as opposed to the heavy commercial usage instituted in the year 2011 and thereafter?
>
> 2. Whether the lower court erred by not scheduling a hearing for additional testimony to determine the "commercial usage" prior to Year 2011 pursuant to this Court's [remand] directive?
>
> 3. Whether without definition as to what vehicles and/or vehicle usage constitutes "commercial traffic" there is uncertainty as to what constitutes allowable vehicles for various activities upon [Swingle's] property, including accessing the buildings (garage), field, woods and a longstanding quarry?

Swingle Parties' Brief, 152 EDA 2023, at 7-8 (some capitalization changed); Lessees' Brief, 153 EDA 2023, at 8-9.

The briefs filed on behalf of the Swingle parties and Lessees argue only that the lower court failed to "delineate" Lessees' heavy truck usage "from its own use to access the farm with a pre-existing stone quarry." Swingle Parties' Brief at 13; **see also** Lessee's Brief at 13. They argue they are entitled to some commercial use of the access road.

---

[5] The texts of the arguments in the two briefs differ slightly as discussed below.

[6] In Lessees' Brief at 153 EDA 2023, the word "Where" is used instead of "Whether," otherwise the question is identical.

As an initial matter, the Court must determine the holding of our 2022 decision and the scope of our remand to the trial court. Pennsylvania Rule of Appellate Procedure 2591, entitled Proceedings on Remand, provides in relevant part "the court . . . shall proceed in accordance with the judgment or other order of the appellate court." Pa.R.A.P. 2591(a). Settled case law indicates that upon remand a trial court is limited to the scope of the remand order. *See Ratner v. Iron Stone Real Estate Fund, I, L.P.*, 266 A.3d 68, 73 (Pa. Super. 2021), quoting *Commonwealth v. Sepulveda*, 144 A.3d 1270, 1280 n.19 (Pa. 2014) (citation omitted) (stating that "it has long been the law in Pennsylvania that following remand, a lower court is permitted to proceed only in accordance with the remand order . . . . [W]here a case is remanded for a specific and limited purpose, issues not encompassed within the remand order may not be decided on remand").

Our 2022 decision remanding this case instructed:

[I]n the instant case, we conclude that the Lessees' increased commercial use of the Access Road cannot be considered the "normal evolution" of the use. Accordingly, we reverse the trial court's order to the extent that it grants a prescriptive easement for purposes of commercial use.

Order affirmed in part, reversed in part, and case remanded for proceedings not inconsistent with this memorandum.

*Halsey*, 283 A.3d 337, unpublished memorandum at *8.

- 9 -

In its 1925(a) opinion, the trial court states, *inter alia*, that the issue in this appeal is the portion of its December 2022 amended order banning commercial traffic on the access road and the court understood that this Court remanded the case for it "to fashion an amended order without . . . permitting the commercial use of the property, that is, the active use of the Swingle property for quarry operations." Trial Court's Statement of Reasons, filed 3/3/23, at 4-5. The trial court declined to amend its order barring commercial use of the access road. **See id**. at 4-7.

We find no error in the trial court's conclusion that the Swingle parties' request to permit commercial use of the access road was resolved by our 2022 decision and that further litigation of commercial use of the easement over the access road was outside the scope of the remand, and therefore beyond the trial court's purview on remand. **See** Pa.R.A.P. 2591(a); **see also**

*Ratner*, 266 A.3d at 73.[7]  We thus decline to grant relief on the Swingle

parties' and Lessee's claims.[8]

Lessees' separately-filed brief differs from the Swingle parties' brief only

in its additional assertion that the trial court recognized some type of prior

commercial use of the access road, and that more testimony was required to

determine the baseline "commercial activity" versus a "Natural Resource Use,

as defined in the Sterling Township [Z]oning Ordinance."  Lessees' Brief at 16.

Lessees did not make any claim concerning a zoning ordinance below and may

not do so for the first time on appeal.  *See* Pa.R.A.P. 302(a).  Accordingly,

Lessees present no preserved claim challenging the trial court's decision.  We

therefore affirm the judgments of the trial court.

_____

[7] Even were we permitted to review the Swingle parties' claim, relief would not issue.  The trial court stated Swingle's testimony failed to state the frequency with which the quarry was used, and there was testimony that other residents of the road were not aware of any quarry operations on the Swingle property until the late 1990s or early 2000s.  Therefore, the use of the road for "quarrying" was not open or notorious for any 21-year period."  Trial Court's Statement of Reasons, filed 3/3/23, at 5 (also stating "the use of the road by quarrying was not open and notorious for any 21-year period").  The court also found no need to explain that use of the access road by milk trucks, hay wagons, and similar vehicles "do not impose an unreasonable burden . . . unlike the burden caused by the use of heavy equipment, machinery and trucks . . . to conduct quarry operations."  *Id*. at 6 n. 7.

[8] The Swingle parties' and Lessees' briefs do not provide argument supported by citations to the record and case law concerning their other claims.  Accordingly, we decline to address those claims.  *See* Pa.R.A.P. 2119(a)-(c); *see also Rogers v. Thomas*, 291 A.3d 865, 881 (Pa. Super. 2023) (*en banc*) (stating that an appellate court will not scour the record and "act as appellant's counsel" (internal citation omitted)).

Judgments affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/12/2023